IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LAWRENCE M. SMITH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:07-CV-1230-P |
| | § | |
| METHODIST HOSPITALS OF DALLAS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court is Defendant Methodist Hospitals of Dallas' ("Methodist") Motion for Summary Judgment, filed September 10, 2008. Plaintiff Lawrence M. Smith filed a Response on October 14, 2008 and Methodist filed a Reply on October 28, 2008. Methodist also filed Objections to Plaintiff's Summary Judgment Evidence on October 28, 2008. After reviewing Methodist's Motion and Objections, the evidence, and the applicable law, the Court GRANTS Methodist's Motion for Summary Judgment.

**I.  Background and Procedural History**

Smith was employed by Methodist as a computer operator. (Compl. ¶ 6.) Smith alleges that he suffered from hypertension, which required medication on a daily basis. (*Id.*) He claims that this medication caused him to suffer symptoms of drowsiness, which interfered with his ability to stay awake during his work shifts. (*Id.* at ¶ 7.) Smith also claims that his supervisor at Methodist allowed him to sleep during his lunch and break periods as needed, and that this accommodation enabled Smith to competently perform the tasks of his employment. (*Id.*)

Methodist arranged for video surveillance of Smith, to record him sleeping while at work, and then terminated Smith's employment for sleeping on the job. (Compl. ¶ 7; Answer ¶ 7.) Smith filed suit in this Court on July 11, 2007, bringing claims under the Americans with Disabilities Act ("ADA") as well as supplemental claims under Texas law for intentional infliction of emotional distress, invasion of privacy, retaliation, and slander.

## II. Summary Judgment Legal Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party bears the burden of informing the court of the basis for its belief that there is an absence of a genuine issue for trial and of identifying those portions of the record that demonstrate such an absence. *Id.* However, all evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). At this point, the nonmovant must provide specific facts that show the case presents a genuine issue of material fact, such that a reasonable jury might return a verdict in his favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent a summary judgment. *Id.* at 248-50; *Abbot v. Equity Group, Inc.,* 2

F.3d 613, 619 (5th Cir. 1993). In other words, conclusory statements, speculation and unsubstantiated assertions will not suffice to defeat a motion for summary judgment. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (*en banc*).

Further, the Court has no duty to search the record for triable issues. *Ragas v. Tenn. Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise matter in which the evidence supports his or her claim." *Id.* However, the Fifth Circuit admonishes that "[w]hen dealing with employment discrimination cases, which usually necessarily involve examining motive and intent . . . granting of summary judgment is especially questionable. In these cases 'summary judgment should be used cautiously and all procedural requirements given strict adherence . . . .'" *Hayden v. First Nat'l Bank*, 595 F.2d 994, 997 (5th Cir. 1979) (quoting *Lavin v. Illinois High Sch. Ass'n*, 527 F.2d 58, 61 (7th Cir. 1975)).

### III. Discussion

**A. Methodist's Objections to Smith's Veterans Affairs Letter**

As a preliminary matter, the Court must consider Methodist's objections to portions of Smith's summary judgment evidence. Methodist objects to Smith's Affidavit Exhibit B, a letter from the Department of Veterans Affairs to Smith on the grounds that the letter "constitutes and contains hearsay, it has not been authenticated by a sworn or certified copy as required by Rule 56(e) of the Federal Rules of Civil Procedure, is not self-authenticated pursuant to Federal Rule of Evidence 902 and has not been otherwise authenticated under Federal Rule of Evidence 901, it contains inadmissible expert opinions without a proper foundation for such opinions laid through a properly qualified and designated expert witness and it is not relevant." (Def.'s Objections to

Pl.'s Summ. J. Evidence 2-3.) The letter itself is undated, although it was apparently faxed on October 22, 2003. The letter does not contain any reference to hypertension, merely stating that "The above named veteran has a compensable service-connected disability of 30 percent." The Court agrees with Methodist that the Veterans Affairs letter is irrelevant, therefore it sustains Methodist's objection and will not consider the letter in connection with Smith's assertions of being disabled due to hypertension.

Methodist objects to numerous other portions of Smith's summary judgment evidence, including portions of Smith's affidavit and its attached exhibits. Because the Court has found it unnecessary to rely upon several portions of the challenged evidence, it need not consider Methodist's objections. Insofar as it may be necessary, this Order will address specific objections to those portions of the disputed evidence that the Court regards as relevant to the resolution of the particular summary judgment issues. The remaining portions of Defendant's motion are moot.

### B. ADA Claims

The ADA prohibits discrimination in employment "against a qualified individual with a disability because of the disability of such individual ...." 42 U.S.C.A. § 12112(a). A "qualified individual with a disability" is defined as "an individual with a disability who with or without reasonable accommodation, can perform essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

A plaintiff may establish a claim of disability discrimination by presenting direct evidence of discrimination. *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 162 (5th Cir. 1996), *cert. denied*, 519 U.S. 1029 (1996). "Alternatively, the indirect method of proof set for

Title VII actions in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), may also be utilized." *Daigle v. Liberty Life Ins. Co.*, 70 F. 3d 394, 396 (5th Cir. 1995). To establish a *prima facie* case of discriminatory discharge in violation of the ADA under the *McDonnell Douglas* analysis, a plaintiff must establish that: (1) he is disabled or regarded as disabled; (2) he is qualified for the job; (3) he was subject to an adverse employment action on account of his disability; and (4) he was replaced by or treated less favorably than non-disabled employees. *McInnis* v. *Alamo Cmty. Coll. Dist.,* 207 F.3d 276, 279-80 (5th Cir. 2000). "Once the plaintiff makes his prima facie showing, the burden then shifts to the defendant employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Once the employer articulates such a reason, the burden then shifts back upon the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination." *Id.* at 280.

Thus, the threshold requirement in any ADA claim is that the plaintiff have a disability within the meaning of the ADA. *Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 654 (5th Cir. 2003). A disability within the meaning of the ADA is either (1) "a physical or mental impairment that substantially limits one or more of the major life activities," or (2) "a record of such impairment," or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(2).

### 1. Impairment

Under the first prong of the ADA's definition of a "disability," a "physical impairment" may be any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive,

genito-urinary, hemic and lymphatic, skin, and endocrine." 29 C.F.R. 1630.2(1). The regulations to the ADA define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). To demonstrate that an impairment "substantially limits" the major life activity of working, an individual must show "significant restriction in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." *Bridges* v. *City of Bossier,* 92 F.3d 329, 334-36 (5th Cir. 1996); 29 C.F.R. § 1630.2(G)(3)(I).

Smith claims that he has been diagnosed with hypertension, an arterial disease in which chronic high blood pressure is the primary symptom. (Pl.'s Resp. 7.) He states in his affidavit that he was prescribed Atenolol to treat his hypertension, and that the drug caused him to experience drowsiness, allegedly a known side affect of the medication. (Smith Aff. 2.) Methodist argues there is no evidence that Smith has a physical or mental impairment that substantially limits one or more major life activities, or significantly restricts Smith's ability to perform a class of jobs.

For purposes of summary judgment, Smith's affidavit is sufficient to establish that he has been diagnosed with hypertension, was prescribed Atenolol, and that the medication causes him to experience drowsiness. However, the hypertension does not constitute a disability because, when medicated, Smith's "high blood pressure does not limit him in any major life activity." *Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516, 516 (1999). Rather, Smith alleges that the side effects of Atenolol limit him. Smith has failed to present any evidence that "his physical condition compelled [him] to take... medications that persistently affected [his] ability... to stay

awake on the job." *Hill v. Kansas City Area Transp. Auth*., 181 F.3d 891, 894 (8th Cir. 1999). Even if the Court took Smith's Veterans Affairs letter into consideration, Smith would nonetheless have failed to address this issue. Therefore, Smith has not presented sufficient evidence that this alleged physical impairment substantially limited him in the major life activity of working. *See id.*

### 2. Record of Impairment

To demonstrate a "disability" under the second prong of the definition, by showing a "record of such an impairment," a plaintiff must show both a history or record of an impairment and that the impairment substantially limits a major life activity. *See Blanks v. Sw. Bell Commc'ns, Inc.,* 310 F.3d 398, 402 (5th Cir. 2002); *see also Burch v. Coca-Cola Co.,* 119 F.3d 305, 321 (5th Cir. 1997). As discussed above, Smith has presented no summary judgment evidence that he has ever been disabled due to hypertension or that any alleged disability has ever limited him in a major life activity.

### 3. Regarded As

With respect to the "regarded as" prong of the definition of disability under the ADA, the Equal Employment Opportunity Commission ("EEOC") regulations provide that an individual is "regarded as having such an impairment" if the individual:

> (1) has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
> (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others towards such impairment; or
> (3) has none of the impairments defined in (1) or (2) above but is treated by a covered entity as having a substantially limiting impairment.

*Waldrip*, 325 F.3d at 657; 29 C.F.R. §1630.2(l).

The U.S. Supreme Court has observed that there are two ways in which individuals may be regarded as having such an impairment: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual non-limiting impairment substantially limits one or more major life activities. *Sutton* v. *United Airlines, Inc.,* 527 U.S. 471, 489 (1999). The Court explained that "in both cases, it is necessary that a covered entity entertained misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Id.* at 489.

Under this prong, the question at issue is whether Methodist treated Smith as substantially limited in his ability to engage in a major life activity. Based on the evidence presented, the major life activity of working is the only activity in which Smith could conceivably claim Methodist regarded him as being substantially limited.

Smith claims that Methodist regarded him as disabled because he told his supervisor about his hypertension and the side effects of his medication. The fact that Smith's supervisor had knowledge of Smith's hypertension and drowsiness does not establish that Methodist regarded Smith as having a substantial limitation on his ability to work. *See Beaver v. Delta*, 43 F. Supp. 2d 685, 693 (N.D.Tex. 1999) (citing *Deas v. River West, L.P.*, 152 F.3d 471, 481-82 (5th Cir. 1998)).

Smith further claims that he was regarded as disabled because his supervisor allowed him to sleep during his breaks as an "accommodation." (Smith Aff. 2.) The department where Smith

worked, however, had a general policy of allowing all night-shift employees to sleep during their breaks. (*Id*.) The affidavits of Larry Romo and David Harris, Smith's co-workers, confirm that "sleeping on the job was a permitted practice," and was the regular policy of their supervisor. (Harris Aff. 2.) The findings of fact made by the Texas Workforce Commission with respect to Smith's case also found that there was a general policy of allowing all "employees on the night shift to sleep openly...." (Smith Aff. Ex. A.) Methodist was not treating Smith as though he was disabled by allowing him to sleep on the job; rather, this was the general policy of the night shift supervisor.

Therefore, Smith has presented no evidence that Methodist regarded Smith as substantially limited in a major life activity. Consequently, Smith has failed to present evidence that he is an individual with a disability under the ADA, and Methodist is entitled to judgment as a matter of law on his disability discrimination claim under the ADA.

### C. Intentional Infliction of Emotional Distress

Intentional infliction of emotional distress ("IIED") is a gap-filler tort, "judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffman-La Rocha Inc.,* 144 S.W.3d at 447 (citing *Standard Fruit & Vegetable Co. v. Johnson,* 985 S.W.2d 62, 68 (Tex.1998)). "If the gravamen of a plaintiff's complaint is the type of wrong that [a] statutory remedy was meant to cover, a plaintiff cannot maintain an intentional infliction claim regardless of whether he or she succeeds on, or even makes, a statutory claim." *Id.* at 448.

Summary judgment is appropriate on an IIED claim where the IIED claim is based on the same facts as an ADA claim. *See Stephenson v. Nokia, Inc.*, No. 3-06-cv-2204-B, 2008 WL 2669492, at * 8 (N.D. Tex. May 1, 2008) (granting summary judgment on IIED claim where ADA and IIED claims were based on the same facts); *Gonnering v. Blue Cross & Blue Shield of Tex.,* 420 F.Supp.2d 660, 663 (W.D. Tex. 2006) (same). Smith cites the same facts for his IIED claim as for his disability discrimination claim; therefore, he cannot maintain an IIED claim regardless of whether he can succeed on his other claims. *Hoffman-LaRocha,* 144 S.W.3d at 448. Accordingly, Methodist's Motion for Summary Judgment on Smith's IIED claim must be granted.

**D. Invasion of Privacy**

In his Complaint, Smith pled two theories of invasion of privacy: intrusion on seclusion and publication of private facts. (Compl. 8.)

**1. Intrusion on Seclusion or Private Affairs**

Smith first alleges that Methodist "intentionally invaded Plaintiffs privacy by intruding on his solitude, seclusion, or private affairs." (Compl. ¶ 13.) Methodist claims that as a matter of law, the summary judgment evidence establishes that Methodist did not intrude upon Smith's solitude, seclusion or private affairs. (Def.'s Resp. 14.)

The elements of a cause of action for invasion of privacy by intrusion on seclusion or private affairs are (1) the defendant intentionally intruded on the plaintiff's solitude, seclusions, or private affairs, and (2) the intrusion would be highly offensive to a reasonable person. *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993).

First, there is no intrusion where there is no legitimate expectation of privacy. *See Vaughn v. Drennon*, 202 S.W.3d 308, 320 (Tex. App.—Tyler 2006, *no pet*). And an employee does not have a reasonable expectation of privacy in a workplace common area or in an area in plain view of others. *See Gillespie v. Dallas Hous. Auth.,* No. 3:01-CV-895-R, 2003 WL 102223, at * 8 (N.D. Tex. Jan. 3, 2003) (holding a public employee did not have a reasonable expectation of privacy where a video camera directed at her office was mounted in plain view in a common hallway). An employee may, however, have a reasonable expectation of privacy in a workplace area where the employee manifested, and the employer recognized, an expectation that an area would be free from intrusion and interference. *See K-Mart Corp. v. Trotti*, 677 S.W.2d 632, 636 (Tex. App.—Houston [1st Dist.] 1984, *writ ref'd n.r.e.*).

In his Complaint, Smith states that he was recorded "in the area where [he] expected privacy while taking his lunch and break periods." (Compl. ¶ 13.) Smith provides no supporting evidence, however, that he had a *legitimate* expectation of privacy in his workplace. Christopher Clark, the Director of IT Operations who oversees the Information Systems Department at Methodist, states that the surveillance camera was installed in a vacant "floater" cubicle that was not Smith's assigned work area nor a designated employee break area. (Clark Aff. 2.) Further, the cubicle was one of twenty-five in the work area, it contained no doors or other barriers secluding it, and it was freely accessible to Methodist employees in the operations department. (*Id*.) Therefore, the Court concludes that Smith did not have a legitimate expectation of privacy in the cubicle in which he was videoed.

In evaluating the second element of an intrusion on seclusion on private affairs claim, whether the intrusion would be highly offensive to a reasonable person, Texas courts require that

(1) the intrusion must be substantial enough that an ordinary person would feel severely offended, humiliated, or outraged, *see K-Mart Corp.,* 677 S.W.2d at 636, and (2) the intrusion must be unreasonable, unjustified, or unwarranted. *Doe v. Mobile Video Tapes, Inc.,* 43 S.W.3d 40, 48 (Tex. App.—Corpus Christi 2001, *no pet.*); *see also, Billings v. Atkinson,* 489 S.W.2d 858, 860 (Tex. 1973) ("an unwarranted invasion of the right of privacy constitutes a legal injury for which a remedy will be granted").

Smith's Complaint states in a conclusory manner that "the invasion was highly offensive to Plaintiff and would be highly offensive to a reasonable person." Smith again provides no summary judgment evidence. Methodist's summary judgment evidence establishes that Mr.Clark had received numerous complaints from Smith's co-workers that he was sleeping on the job and they were having to carry his work load. (Clark Aff. 2.) Methodist claims that surveillance was therefore warranted. (Def.'s Mot. for Summ. J. 14.) The Court also notes that Smith submitted photographs to the Court—presumably taken by, or at the request of, Smith—that are allegedly of his co-worker Gail Davis asleep at her workstation. (Smith Aff. Ex. C.) As Smith took the initiative to photograph a Methodist employee asleep in her workstation, the Court must conclude that Smith cannot genuinely regard such an action to constitute an intrusion that would cause an ordinary person to feel severely offended, humiliated, or outraged.

### 2. Publication of Private Facts

Plaintiff next alleged that Methodist invaded his privacy by "publiciz[ing] facts regarding Plaintiff's private life which were not of legitimate public concern. The publicity was highly offensive to Plaintiff and would be highly offensive to a reasonable person... More specifically,

Defendant disclosed private facts about Plaintiff's disability to Plaintiff's coworkers and management [personnel]." (Compl. ¶ 14.)

The three essential elements of invasion of privacy by public disclosure of private facts are: (1) publicity was given to matters concerning one's personal life, (2) publication would be highly offensive to a reasonable person of ordinary sensibilities, and (3) the matter publicized is not of legitimate public concern. *Indus. Found. of the South v. Tex. Indus. Accident Bd.*, 540 S.W.2d 668, 682 (Tex. 1976). Publicity means that a matter is communicated to the public at large or disseminated to so many people that it becomes public knowledge. *Id*. at 683-84. The matter publicized must relate to the plaintiffs private life. *Id*. There is a presumption under Texas law that the public has no legitimate interest in private, embarrassing facts about private citizens. *Id*. at 685.

As a matter of law, Methodist did not publish any facts regarding Smith's private life because any communication made by Methodist was to no more than a small group of persons: Smith's coworkers and management personnel. (Clark Aff. 2.) There is no evidence that Methodist communicated any such facts to the public at large. Consequently, Methodist is entitled to summary judgment on Smith's invasion of privacy claim.

### E. Retaliation

Smith alleges that Methodist instituted a campaign of retaliation against Smith for "exercising his rights by opposing a discriminatory practice," which included Smith's wrongful termination. (Compl. ¶ 15.)

The retaliation provision of the ADA states that:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C.A. § 12203(a).

To establish a *prima facie* case for retaliation, a plaintiff must show "(1) that [he] engaged in activity protected by the ADA, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action. *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002) (quoting *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002)). Once a plaintiff establishes a *prima facie* case, the burden then shifts to the employer to establish a legitimate, non-retaliatory reason for terminating the plaintiff's employment. *Id.* (quoting *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir.2001)). If the defendant satisfies this burden, the plaintiff must prove that the employer's stated reason for the adverse action was merely a pretext for the real, discriminatory purpose. *Id*. At the summary judgment stage, the nonmovant need only point to the existence of a genuine issue of material fact. *Id.*

With respect to the first prong, Smith appears to allege that he engaged the ADA protected activity of "opposing a discriminatory practice" by seeking and utilizing an alleged accommodation, *i.e.*, napping during his lunch break. (Compl. 8; Pl.'s Resp. 18.) Methodist insists that there is no evidence that Smith engaged in a protected activity and that "napping during his lunch break" does not constitute a protective activity for purposes of an ADA retaliation claim. (Def.'s Mot. for Summ. J. 16; Reply 8.)

A protected activity under the ADA can be either opposing an act of discrimination made unlawful by the ADA ("the opposition clause"), or participating in an investigation, proceeding

or hearing under the ADA ("the participation clause"). 42 U.S.C.A. § 12203(a); *see Hunt v. Neb. Pub. Power Dist.* 282 F.3d 1021, 1028 (8th Cir. 2002) (affirming summary judgment for defendant because plaintiff failed to establish prima facie case of retaliation in sex discrimination case brought under Title VII). Thus, Smith's claim that he sought, received, and took advantage of a purported accommodation for a disability—even if true—does not constitute a protected activity under the ADA for retaliation purposes. *See Price v. City of Terrell,* No. 3:95-CV2143, 2001 WL 1012697 at * 3 (N.D. Tex. 2001) (holding that "[t]aking FMLA leave does not of itself constitute opposition to disability discrimination" and therefore does not constitute a protected activity under the ADA for retaliation purposes). Thus, Smith has failed to establish a prima facie case of retaliation.

### F. Slander

In his Response, Smith withdraws his cause of action for slander. (Pl.'s Resp. 16.)

## IV. Conclusion

For the foregoing reasons, the Court GRANTS Methodist's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Signed this 19th day of December, 2008.

_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE